107 Pa. Commonwealth Ct. 542 (1987)
529 A.2d 562
William and Donna McClimans, et al., Appellants
v.
Board of Supervisors of Shenango Township, Appellee.
No. 581 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued March 25, 1987.
July 22, 1987.
*543 Argued March 25, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
Victor R. Delle Donne, Baskin, Flaherty, Elliott & Mannino, P.C., for appellants.
*544 Gabriel P. Cilli, LaMancusa & Cilli, P.C., for appellee.
OPINION BY JUDGE MacPHAIL, July 22, 1987:
The Amerikohl Land Company and a group of landowners (Appellants) appeal an order of the Lawrence County Court of Common Pleas which affirmed a decision by the Shenango Township (Township) Board of Supervisors denying Appellants' request that it declare relevant portions of its zoning ordinance invalid and adopt Appellants' proposed curative amendment. We vacate and remand.
The landowners involved have leased to Amerikohl the right to remove, by a strip mining process, coal on their property. The property in question is zoned R-1 residential. Under the terms of the zoning ordinance, surface mining is not a permitted use in the R-1 zone. Appellants filed a request for a curative amendment to the Township's ordinance which would permit the mining. The Township Board of Supervisors (Board) refused to grant the curative amendment.
Appellants insist that the Township's ordinance is invalid and that, hence, they have a right to strip mine on the property. They appealed the Board's decision to the common pleas court. That court upheld the decision of the Board. Appellants now bring their appeal to us.
The question which we are now concerned with is whether the Board's action in determining that the ordinance is valid was improper. Where, as here, the common pleas court, in considering a township board of supervisors' determination on a petition for a curative amendment, takes no additional evidence, our scope of review is limited to a determination of whether the governing body committed an error of law or a manifest abuse of discretion. McKown v. Board of Supervisors of East Fallowfield Township, 104 Pa. Commonwealth Ct. *545 428, 522 A.2d 159 (1987). We may only conclude that the governing body abused its discretion if its findings are not supported by substantial evidence. See Valley View Civic Ass'n v. Zoning Board of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 555, 462 A.2d at 640.
We must also keep in mind that a zoning ordinance carries with it a strong presumption of validity and that a party seeking to challenge that validity bears an extremely heavy burden to invalidate the ordinance. Appeal of Gulf Oil Corp., 101 Pa. Commonwealth Ct. 327, 516 A.2d 420 (1986).

STATEMENT OF COMMUNITY OBJECTIVES
Appellants make a series of attacks on the validity of the Township's zoning ordinance. Their first argument is that the ordinance is invalid because it does not contain a "statement of community development objectives."
Section 606 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10606 provides as follows:
Each zoning ordinance enacted after the effective date of this act shall contain a statement of community development objectives. This statement may be supplied by reference to the community comprehensive plan or such portions of the community comprehensive plan as may exist and be applicable or to a statement of legislative findings of the governing body of the political subdivision, having a bearing on the community comprehensive plan, with respect to land use, density of population, and location and function of streets and other community facilities and utilities, together with any other factors *546 that the municipality believes relevant in describing the purposes and intent of such ordinance. With respect to zoning ordinances enacted prior to the effective date of this act, a statement of community development objectives shall be supplied by amendment to the zoning ordinance within three years from the effective date of this act.
In Springfield Township Appeal, 81 Pa. Commonwealth Ct. 513, 474 A.2d 706 (1984) this Court, in refusing to declare a zoning ordinance invalid, stated:
We believe that the invalidation of the Springfield Township Zoning Ordinance would be a drastic remedy under the present circumstances. The Township had in fact substantially complied with the Section 606 requirement when in 1971, it adopted a Land Use Plan containing a statement of community development objectives. For this Court to invalidate the ordinance merely because it does not contain a cross-reference to the Township's Land Use Plan would be to raise form over substance.
Id. at 526, 474 A.2d at 712.
It was quite appropriate for this Court to establish this caveat to Section 606 of the MPC in light of the fact that, as noted in footnote 7 of the Springfield Township case, the filing of a comprehensive plan is optional under the MPC. A municipality which has enacted a comprehensive plan has obviously done much more to state its community development objectives than is required by the MPC. To strike down a zoning ordinance, which is valid and sound in all other respects, merely because there is no cross-reference to the comprehensive plan would be ludicrous. If a comprehensive plan exists, it is likely that the primary ends of the MPC  to provide for planned, rational, non-arbitrary zoning  is indeed being *547 achieved by the municipality involved. Finding a zoning ordinance to be invalid under such circumstances would in fact thwart the MPC's goal of providing for rational, planned development.
In the case at bar, the zoning ordinance was enacted before the effective date of the MPC. The zoning ordinance was never amended, however, to include a statement of community objectives or a reference to a comprehensive plan. Appellants assert that this is fatal to the ordinance. We disagree because there is in existence a comprehensive plan for Shenango Township.
It is true, as the Appellants point out, that while the comprehensive plan was alluded to several times during the hearing, it was never formally introduced into evidence. Further, it was never made part of the record certified to us. However, we are of the opinion that we are required to take judicial notice of the comprehensive plan.
It is clear that the Common Pleas Court Judge did just that. In his opinion he stated: "In the present case, the township's multi-volume Comprehensive Plan, pursuant to which the zoning ordinance was adopted, serves the purpose of a statement of objectives. . . ." McClimans v. Board of Supervisors of Shenango Township, (No. 118 of 1985, M.D. in the Court of Common Pleas of Lawrence County, filed January 29, 1986), Slip Op. at 6. The Common Pleas Court was correct to take judicial notice of the comprehensive plan. In Board of Supervisors, Township of Bensalem v. DiEgidio, 40 Pa. Commonwealth Ct. 209, 396 A.2d 920 (1979), this Court ruled that in a proceeding to compel a township board of supervisors to approve applications for a land development and a subdivision, the trial court did not err in taking judicial notice of township regulations which were adopted by resolution and which related to applications for land development. That decision was *548 based on Section 1 of the Act of April 8, 1941, P.L. 16, as amended, formerly 28 P.S. §301, repealed by the Act of April 28, 1978, P.L. 202. That section provided:
Every court of this State shall take judicial notice of the ordinances of cities, boroughs, incorporated towns and townships of the first class within the Commonwealth. (Emphasis added.)
This statute has been replaced by a similar provision found in Section 6107 of the Judicial Code, 42 Pa. C. S. §6107:
(a) General rule.  The ordinances of municipal corporations of this Commonwealth shall be judicially noticed.
(b) Manner of proving ordinances.  The tribunal may inform itself of such ordinances in such manner as it may deem proper and the tribunal may call upon counsel to aid it in obtaining such information. (Emphasis added.)
We feel that the comprehensive plan is on an even footing with "township regulations," which were found to be proper subjects of judicial review in DiEgidio. Further, we find the situation in the case sub judice analogous to that in Harrisburg Fore Assoc. v. Board of Supervisors of Lower Paxton Township, 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975). In that case it appears that a subdivision ordinance was not made part of the record in hearings before the board of supervisors. However, on appeal to the Common Pleas Court, the ordinance was made a part of the record. The ordinance was not made part of the record certified on appeal to the Commonwealth Court. We held, however, that we were required to take judicial notice of the ordinance pursuant to the now-repealed 28 P.S. §301.
In the case at bar, the comprehensive plan was technically made part of the record when the Common Pleas Court took judicial notice of it. As in Harrisburg *549 Fore Assoc., however, the plan was not included in the record certified to this Court. We feel that we must, as we did in that case, take judicial notice of the plan. 42 Pa. C. S. §6107(a) requires that ordinances "shall be judicially noticed." Further, 42 Pa. C. S. §6107(b) sets forth a mechanism for us to do that. We have, with the aid of counsel in this case, obtained a copy of the comprehensive plan. We conclude that the plan does meet the legislative criteria of Section 606 of the MPC. As such, we conclude that the board of supervisors did not err in not finding the zoning ordinance invalid because it did not include a statement of community objectives.

SURFACE MINING CONSERVATION AND RECLAMATION ACT
Appellants next attempt to persuade us that the portions of the Township's zoning ordinance which regulate surface mining are void because they have been superseded by the Surface Mining Conservation and Reclamation Act (SMCRA), Act of May 31, 1945, P.L. 1198, as amended, 52 P.S. §1396.1-§1396.31. We disagree.
Section 17 of the SMCRA was amended by the Act of November 30, 1971, P.L. 554 to provide the following:
Except with respect to zoning ordinances, all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.
The Act of October 10, 1980, P.L. 835 added Section 17.1 to the SMCRA:
Except with respect to ordinances adopted pursuant to the Act of July 31, 1968 (P.L. 805, No. 247), known as the `Pennsylvania Municipalities Planning Code,' all local ordinances and enactments *550 purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.
Section 17.1 of the SMCRA, 52 P.S. §1396.17a
Appellants argue that the wording of Section 17.1 dictates that only those local zoning ordinances adopted pursuant to the MPC are insulated from being superseded by the SMCRA. We disagree.
As noted by our Supreme Court in Miller & Son Paving, Inc. v. Wrightstown Township, 499 Pa. 80, 451 A.2d 1002 (1982), when the legislature added Section 17.1 to the SMCRA, it did not expressly repeal Section 17. Our research has not revealed any other legislative enactment which has repealed Section 17.[1] We must conclude that Section 17 is still in force.
The plain meaning of Section 17 leaves untouched zoning ordinances which regulate surface mining. As our Supreme Court stated in Miller & Son Paving:
The term `superseded,' contained in the first sentence of section 17, ordinarily refers to the displacement of something that already exists, not something that may come into existence. Thus the first sentence of section 17 reflects a legislative intent to displace all local regulations relating to surface mining which were in existence as of the effective date of the Act (January 1, 1972), except for zoning ordinances. Because the challenged ordinance was effective as of December 18, 1971, it has been preserved from supersession by the express language of the first sentence.

*551 Under the Statutory Construction Act of 1972, `[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage. . . .' 1 Pa. C. S. §1903(a). Additionally `[e]very statute shall be construed, if possible, to give effect to all its provisions.' 1 Pa. C. S. §1921(a). These considerations require the conclusion that the second sentence of section 17 was not designed to invalidate local measures relating to surface mining operations which were, as here, enacted before the effective date of the Act of 1971. The term `preempts,' contained in the second sentence of section 17, ordinarily refers to an act which precludes action on the same subject by another in the future. No rule of logic or syntax permits the construction that the Legislature's preemption of future regulation affects zoning ordinances which were in existence on the effective date of the Act and thus are specifically preserved from supersession. Such a construction would render the exception clause contained in the first sentence of Section 17 a nullity and would render the remainder of the first sentence mere surplusage.
Id. at 86-7, 451 A.2d at 1005.
The zoning ordinance in question in the case sub judice was enacted on May 27, 1967. In that the ordinance was enacted before January 1, 1972, Section 17 saves it from being superseded. The Township Board of Supervisors did not err in determining that the SMCRA did not supersede the portions of the Township's zoning ordinances which deal with strip mining.

EXCLUSION
Appellants further argue that the Township's zoning ordinance is invalid because it totally excludes strip mining from the Township.
*552 Section 601 of the Township's zoning ordinance provides in pertinent part:
In A-1 Agricultural Districts, the following conditional uses require Board authorization:
1. Conditional Uses:
. . . .
c. Strip-mining for mineral, sand, gravel, clay, limestone, or sandstone deposits subject to conditions set forth in Section, Article.
Appellants point out that the blanks in subsection c were never filled in. However, the Township did enact, on April 12, 1971, the Shenango Township Strip Mining Ordinance. Appellants argue that ordinance was superseded by the SMCRA and, hence, there having been no valid conditions placed on the conditional use of strip mining, the use must be deemed not permitted in the Township. We disagree.
As we have noted, zoning ordinances in effect before January 1, 1972 are saved from being superseded by Section 17 of the SMCRA. Because the Shenango Township Strip Mining Ordinance was enacted before that date, the zoning regulations found therein are saved.
Appellants stress that much of the Strip Mining Ordinance is not a traditional zoning ordinance, but rather deals with subjects specifically regulated by the SMCRA. Our review of the ordinance reveals that Appellants do, indeed, have a point. However, we conclude that even if those provisions of the strip mining ordinance have been superseded, the traditional zoning aspects of the ordinance clearly have not. See Nalbone v. Borough of Youngsville, 104 Pa. Commonwealth Ct. 623, 522 A.2d 1173 (1987); Greene Township v. Kuhl, 32 Pa. Commonwealth Ct. 592, 379 A.2d 1383 (1977). As such, the Township does provide valid conditions for the conditional use of strip mining. We conclude that *553 the Board was correct in determining that strip mining is not excluded from the Township.[2]

TAKING WITHOUT JUST COMPENSATION
Finally, Appellants make two related arguments. They claim: (a) that the Township's Zoning Ordinance is based on "improper, irrational and discriminatory planning" not based on a comprehensive plan and bearing no rational relationship to the health, safety, morals or general welfare of the public and (b) that the Board's failure to grant Appellants relief constitutes an unreasonable restriction and unconstitutional taking without compensation in violation of the Pennsylvania and United States Constitutions.
When the constitutionality of a zoning ordinance is attacked, there is a presumption that the ordinance is valid. Layne v. Zoning Board of Adjustment of City of Pittsburgh, 501 Pa. 224, 460 A.2d 1088 (1983). Further, a zoning ordinance is a valid exercise of the police power when it promotes public health, safety or welfare and its regulations are substantially related to the purpose the ordinance purports to serve. Boundary Drive Assoc. v. Shrewsbury Township Board of Supervisors, 507 Pa. 481, 491 A.2d 86 (1985). The use of the police power, however, is not unfettered. This Court has said in considering the validity of a zoning ordinance that "[t]he police power, however broadly construed, may not be employed to take private property for public use without just compensation." Jacquelin v. Horsham Township, 10 Pa. Commonwealth Ct. 473, 477, 312 A.2d 124, 126 (1973).
*554 Our analysis, then, must be two-pronged. As the United States Supreme Court recently said: "[w]e have held that land use regulation can effect a taking if it `does not substantially advance legitimate state interests,. . . or denies an owner economically viable use of his land.'" Keystone Bituminous Coal Ass'n v. DeBenedictis, 107 S.Ct. 1232, 1242 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260 (1980)) (emphasis added).
As to the first prong of the analysis, whether the zoning ordinance advances a legitimate state interest by being substantially related to the health, safety, morals or general welfare of the public,[3] we feel that ample evidence was presented to support the Board's findings that to permit strip mining in the residential zone would be detrimental to the public's health, safety and general welfare.
The Board found that sources of drinking water may be adversely affected by strip mining, that blasting smoke is toxic and could blow off the mining site, that allowing strip mining would devalue homes in the area and that the blasting involved in strip mining could damage homes. Those findings certainly establish that the prohibition against strip mining in the residential zone does bear a rational relationship to the health, safety, morals or general welfare of the public. See G.M.P. Land Co. v. Board of Supervisors of Hegins Township, 72 Pa. Commonwealth Ct. 591, 457 A.2d 989 (1983).
We must weigh this benefit to the public against the burden which has been placed on the Appellants. As Justice HOLMES said in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922): "The general rule at least is that while property may be regulated to a certain *555 extent, if regulation goes too far it will be recognized as a taking."
This Court was presented with a case factually similar to the case sub judice in G.M.P. Land Co. There Judge CRAIG said:
`If the effect of the zoning law or regulation is to deprive a property owner of the lawful use of his property, it amounts to a "taking," for which he must be justly compensated.' Cleaver v. Board of Adjustment, 414 Pa. 367, 372, 200 A.2d 408, 412 (1964) (emphasis in original). However, because all zoning involves a taking in the sense that the owner is not completely free to use his property as he chooses, such a taking does not entitle the owner to relief, unless the ordinance unreasonably restricts his rights. Miller & Son Paving v. Wrightstown Township, 499 Pa. 80, 88, 451 A.2d 1002, 1006 (1982); see also Snyder at 395, 430 A.2d at 345 (property taken when rendered valueless or no longer useful in reasonable manner). Restrictions are not per se unreasonable simply because they limit the extraction of minerals. Miller at 88, 451 A.2d at 1006.
Yet, as we noted in Township of Paradise v. Mt. Airy Lodge, Inc., 68 Pa. Commonwealth Ct. 548, 554, 449 A.2d 849, 852 n.7 (1982), in Pennsylvania, the zoning of mining operations assumes added significance because Commonwealth law recognizes coal, surface, and the right to support as three separate estates in land, each capable of being vested in different persons at the same time. Commonwealth v. Fitzmartin, 376 Pa. 390, 102 A.2d 893 (1954); Smith v. Glenn Alden Coal Co., 347 Pa. 290, 32 A.2d 227 (1943).

*556 Thus, as our Supreme Court implicitly recognized in Mutual Supply Co. Appeal, 366 Pa. 424, 430-31, 77 A.2d 612, 615 (1951), an ordinance's exclusion of mining on the surface can amount to a taking of the coal estate below if that ordinance `conclusively prevents' an owner from gaining access to his subsurface property.
Therefore, to determine if the township's zoning ordinance here is confiscatory, we must examine if its prohibition against mining in the S-1 district unreasonably restricts GMP's access to the company's coal estate below.
Id. at 598-99, 457 A.2d at 993-94 (emphasis in original).[4]
*557 Both G.M.P. Land Co. and the case it relies on, Mutual Supply Co. Appeal, had one factual distinction from the case we presently must decide. Unlike the case at bar, in both of those cases, there was evidence presented that the owner of the coal estate could reach the coal through means other than surface mining. Both cases stand for the proposition that it does not matter if those other means are more expensive than surface mining. In order to be a "taking" of the coal estate, the coal's exclusion must be conclusively prevented by the zoning ordinance. In Mutual Supply Co. Appeal, the *558 Pennsylvania Supreme Court even went so far as to say that if underground mining can be accomplished at all, even if the surface opening for the mine is only available in another municipality, the fact that mining operations are not permitted and/or feasible in the municipality whose ordinance is being attacked does not constitute a "taking."
In the case at bar, there have been no findings made on whether the coal underlying the landowner-Appellants' property could be extracted by any means permitted by the zoning ordinance of the Township or the ordinance of a nearby municipality. Indeed, it appears that no evidence has been presented on this issue. With reluctance, we find it necessary to remand so that these facts may be developed.
We may note that because it is Appellants who have the burden of showing that the ordinance is unconstitutional, they have the burden of proof in showing that the extraction of the coal is conclusively prevented by the ordinance. Further, if it can be shown that the extraction of the coal has been conclusively prevented, then the ordinance will be rendered invalid as a taking without just compensation. If a "taking" is found to exist, the Township of course has the option of retaining the ordinance as is and paying the owners of the coal estate just compensation. If there is a "taking" and the Township subsequently amends the ordinance to allow the strip mining, the Township would then be required to pay just compensation for the harm caused to the Appellants by the "temporary taking." See First Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, 55 U.S.L.W. 4781 (U.S. June 9, 1987). This just compensation would include damages Appellants could prove as a result of the delay in extracting the coal caused by the Township's ordinance.

*559 SUMMARY AND CONCLUSION
The lack of a statement of community objectives does not render the ordinance invalid. The ordinance, insofar as it regulates strip mining, is not superseded by SMCRA. Since provision is made in the ordinance for strip mining as a conditional use, the ordinance does not unlawfully exclude that use; nevertheless, if Appellants prove that they are conclusively prevented by the terms of the ordinance from extracting coal from the subject property the ordinance would be rendered invalid because it effects a taking without provisions for just compensation.
Because there are no findings with respect to the last mentioned issue, we conclude that the case must be remanded to the Common Pleas Court for the taking of additional evidence or for further remand to the Board of Supervisors for a determination of whether the Township's zoning ordinance conclusively prevents Appellants from gaining access to their subsurface property, thus rendering the ordinance invalid as a taking without just compensation.[5]

ORDER
The decision of the Lawrence County Court of Common Pleas is vacated. The case is remanded to that Court for proceedings consistent with the foregoing opinion.
Jurisdiction relinquished.
*560 CONCURRING OPINION BY JUDGE CRAIG:
As a supplement to the sound majority opinion hereby joined, a precautionary comment to municipal officials is warranted.
As the majority opinion objectively notes, the township's performance with respect to its zoning regulations has involved some significant missteps:
1. The township failed to comply with the clear and feasible statutory requirement that a literal Statement of Community Objectives be enacted as part of the zoning ordinance;
2. The township neglected to take the simple step of entering its comprehensive plan on the record, in order to remedy the preceding error;
3. In the zoning ordinance, the township carelessly left blank an essential cross-reference to the standards necessary for the legality of a strip-mining conditional use; and
4. The township failed to incorporate into the zoning ordinance minimal standards of the required nature, which were readily available in another enactment of the same township.
The majority opinion well displays the extra judicial effort which courts are forced to bring to bear, to avoid injury to legitimate public goals, when faced with the results of neglectful government as outlined above.
Unfortunately, the history of land-use control law contains too many instances of such need for judicial salvage efforts. For example, the widespread failure of municipalities throughout this Commonwealth and the entire nation, during the earlier decades of this century, to adopt actual comprehensive plans in order that their zoning ordinances be "in accordance with a comprehensive plan," required the courts to adopt a minimizing interpretation of that statutory requirement, in order to *561 save municipal zoning from complete extinction. Key Realty Co. Zoning Case, 408 Pa. 98, 182 A.2d 187 (1962). The classic statement of the problem is in Haar, "In Accordance with a Comprehensive Plan," 68 Harv.L.Rev. 1154 (1955).
A more recent example is the course which this court took in Springfield Township Appeal, 81 Pa. Commonwealth Ct. 513, 474 A.2d 706 (1984), to avoid a similar extinction of local zoning when municipal officials have displayed incapability with respect to meeting the simplified "Statement of Community Objectives" requirement, which the legislature had installed in place of the comprehensive plan mandate, in order to ease municipal zoning chores.
The assistance which the judicial system has consistently extended to local municipalities in these matters, out of concern for the welfare of the public, should challenge municipal officials to be better prepared in pursuing the heavy and intricate responsibilities which rest upon them.
NOTES
[1] Section 17 no longer appears at 52 P.S. §1396.17 in Purdon's Pennsylvania Statutes Annotated, although the text of Section 17 does appear in the note to 52 P.S. §1396.1.
[2] Appellants did not raise the issue of whether strip-mining, not being de jure excluded, is, nevertheless, de facto excluded. This being the case, we do not reach the issue of whether the area zoned agricultural is large enough to permit a fair share of strip mining in the Township.
[3] See Section 604 of the MPC, 53 P.S. §10604.
[4] While the significance of the distinction between the coal estate and the surface estate remains viable for land use regulation purposes, the significance of the support estate seems to have been obliterated, at least for purposes of deciding taking issues under the federal constitution, by the following language in Keystone Bituminous Coal Ass'n v. DeBenedictis, 107 S.Ct. 1232, 1250 (1987):

Pennsylvania property law is apparently unique in regarding the support estate as a separate interest in land that can be conveyed apart from either the mineral estate or the surface estate. Petitioners therefore argue that even if comparable legislation in another State would not constitute a taking, the Subsidence Act has that consequence because it entirely destroys the value of their unique support estate. It is clear, however, that our takings jurisprudence forecloses reliance on such legalistic distinctions within a bundle of property rights. For example, in Penn Central [Transportation Co. v. New York City, 438 U.S. 104 (1978),] the Court rejected the argument that the `air rights' above the terminal constituted a separate segment of property for Takings Clause purposes. 438 U.S., at 130, 98 S.Ct., at 2662. Likewise, in Andrus v. Allard, we viewed the right to sell property as just one element of the owner's property interest. 444 U.S., at 65-66, 100 S.Ct., at 326-327. In neither case did the result turn on whether state law allowed the separate sale of the segment of property.
The Court of Appeals, which is more familiar with Pennsylvania law than we are, concluded that as a practical matter the support estate is always owned by either the owner of the surface or the owner of the minerals. It stated:
The support estate consists of the right to remove the strata of coal and earth that undergird the surface or to leave those layers intact to support the surface and prevent subsidence. These two uses cannot co-exist and, depending upon the purposes of the owner of the support estate, one use or the other must be chosen. If the owner is a mine operator, the support estate is used to exploit the mineral estate. When the right of support is held by the surface owner, its use is to support that surface and prevent subsidence. Thus, although Pennsylvania law does recognize the support estate as a `separate' property interest, id., it cannot be used profitably by one who does not possess either the mineral estate or the surface estate. See Montgomery, The Development of the Right of Subjacent Support and the `Third Estate in Pennsylvania,' 25 Temple L.Q. 1, 21 (1951). 771 F.2d at 715-716. (Footnotes omitted.)
In the case sub judice, both the coal estates and the surface estates in the subject plots of land are owned by individual landholders who have leased the coal estate to Amerikohl. The fact that both estates are owned by the same persons does not affect our analysis. See G.M.P. Land Co.
[5] If the Board of Supervisors decided that Appellants have been conclusively prevented from extracting coal from the subject property by the terms of the Township's zoning ordinance, it may well be that Appellants then will have to proceed under the provisions of the Eminent Domain Code, Act of June 22, 1964, Sp. Sess., P.L. 84, as amended, 26 P.S. §§1-101  1-903 to obtain just compensation for the taking inasmuch as there is no provision in the MPC for the award of monetary damages.