**1916 DELAWARE TAVERN, INC.**

v.

**ZONING BOARD OF ADJUSTMENT and City of Philadelphia, Appellants,**

**CARNEY'S CITY LINE, INC.,**

v.

**ZONING BOARD OF ADJUSTMENT and Philadelphia College of Osteopathic Medicine and City of Philadelphia, Appellants,**

**14,000 SIBLINGS, INC.**

v.

**ZONING BOARD OF ADJUSTMENT and City of Philadelphia,**

**City of Philadelphia, Appellant,**

**EURS CORPORATION,**

v.

**ZONING BOARD OF ADJUSTMENT and City of Philadelphia**

**City of Philadelphia, Appellant,**

**TEAZERS', INC.,**

v.

**ZONING BOARD OF ADJUSTMENT**

**City of Philadelphia, Appellant,**

**SOMERTON CIVIC ASSOCIATION, Appellant,**

v.

**The ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA, and the City of Philadelphia, and 14,000 Siblings, Inc.,**

**CHINESE GOSPEL CHURCH, Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT and Race Street Cafe, Inc.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1995.
Decided March 28, 1995.

Richard Feder, Deputy City Sol., for appellants/appellees Zoning Bd. of Adjustment and City of Philadelphia.

William B. Morrin, for appellees/appellants.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

## INTRODUCTION

These are seven consolidated appeals from seven identical orders entered by Judge Bernard J. Avellino of the Court of Common Pleas of Philadelphia County (trial court). The basic issue presented in these cases is whether the trial court improperly held that, due to the Liquor Code's[1] comprehensive regulation of all aspects of the liquor industry, the City of Philadelphia (City) was entirely precluded from attempting to apply Section 14–1605 of its Zoning Code to liquor licensees who provide adult entertainment.

We hold that the City's Zoning Code was not preempted by the Liquor Code and reverse and remand for further proceedings.

Section 14–1605 of the City of Philadelphia's Zoning Code, in relevant part, provides as follows:

(1) Legislative Findings. The Council finds that:

(a) There has been a recent proliferation, concentrating in certain areas of the City, of certain uses;

(b) That the concentration of these uses causes a deleterious effect on the aesthetics and economics of the areas in which these uses are located;

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—9–902.

(c) That the concentration of these uses causes the areas in which these uses have located to become a focus of crime;

(d) In order to prevent the further deterioration of communities and neighborhoods in the City of Philadelphia, and to provide for the orderly, planned future development of the City, that in addition to existing zoning regulations, certain additional special regulations are necessary to insure that these adverse effects will not continue to contribute to the blighting or downgrading of surrounding neighborhoods; and

(e) For the purpose of controlling the concentration of certain uses, special regulations relating to the *location* of these uses is necessary.

(2) Definitions:

. . . .

(d) Cabaret. An adult club, restaurant, theater, hall or similar place which features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers exhibiting specified anatomical areas or performing specified sexual activities.

(R.R. 45a) (emphasis added). The Council then set forth in great detail the specified anatomical areas and sexual activities[2] re-

ferred to in the above-quoted subsection (2)(d) as well as the prohibited and permissible *locations*[3] for cabarets and the other "regulated" uses listed in subsection (3)(a)–(h), including adult book stores, adult mini-motion picture theaters, cabarets, massage businesses, drug paraphernalia stores, amusement arcades and pool rooms. (R.R. 46a.)

## PROCEDURE

In Nos. 1900, 1901, 1903 and 1904 C.D. 1994 (1916 Delaware Tavern, Inc.; Carney's City Line, Inc.; EURS Corporation; and Teazers, Inc.), the City appeals from the trial court's rescission of the City's Zoning Board of Adjustment's (Board's) denial of variances or granting of temporary variances for adult entertainment establishments. (1916 Delaware Tavern, Inc.—temporary variance; Carney's City Line, Inc.—variance denied; EURS Corporation—variance denied; Teazers, Inc.—variance denied.)

In Nos. 1902 and 2169 C.D.1994, the Board granted temporary variances and Somerton Civic Association and the liquor licensees, 14,000 Siblings, Inc. and the Emerald Club, filed cross-appeals to the trial court. The Licensees protested the temporary nature of the variances and Somerton Civic Association

2. (e) Specified Anatomical Areas:
 (i) *Less than completely and opaquely covered*
 (a) Human genitals, pubic region;
 (b) Buttocks; and
 (c) Female breasts below a point immediately above the top of the areola; and
 (ii) *Human male genitals in a discernibly turgid state, even if completely and opaquely covered.*
 (f) Specified sexual activities.
 (i) Human genitals in a state of sexual stimulation or arousal;
 (ii) Acts of human masturbation, sexual intercourse or sodomy;
 (iii) Fondling or other erotic touching of human genitals, pubic region, buttocks or female breasts.
 (Section 14–1605(2)(e) and (f) of the City's Zoning Code, R.R. 45a.)

3. (4) Prohibited Conduct. No regulated use shall be permitted:
 (a) Within one thousand (1,000) feet of any other existing regulated use; and/or,
 (b) Within five hundred (500) feet of any residentially zoned district, Institutional Development District or any of the following residentially related uses:
 (1) Churches . . .;
 (2) Schools . . .;
 (3) Public playgrounds, public swimming pools, public parks and public libraries.
 . . . .
 (d) Within any Commercial Zoned District, except for 'C–6' Commercial in which Regulated Uses shall be permitted, unless a Zoning Board of Adjustment certificate is obtained . . . provided, however, *wherever a Regulated Use is otherwise prohibited in any Commercial Zoned District under this Title, a Zoning Board of Adjustment variance shall be required. . . .*
 (e) Within the 'L–4,' 'L–5,' and 'G–2' Industrial Districts unless a Zoning Board of Adjustment Certificate is obtained . . . within the 'L–1,' 'L–2,' 'L–3,' 'G–1,' and 'Port Industrial' Industrial Districts unless a Zoning Board of Adjustment Variance is obtained . . . except in the 'Least Restricted' Industrial District wherein regulated uses shall be permitted. . . .
 (Section 14–1605(4)(a), (b), (d) and (e) of the City's Zoning Code, R.R. 46–7a.)

protested the grant of any variance whatsoever. The trial court granted the Licensees' appeal and denied the community group's appeal. The City is only a nominal appellee in the community group's appeal.

In No. 2170 C.D.1994 (Chinese Gospel Church), the City is also only a nominal appellee because it was not aggrieved by the trial court's rescission of the Board's grant of a variance to Race Street Cafe. Even though the court rescinded the Board's ruling, the effect of the trial court's ruling was to allow Race Street Cafe to operate, albeit for different reasons. Thus, the aggrieved party is the Chinese Gospel Church.[4]

## BACKGROUND

On October 4, 1993, Commissioner Bennett Levin of the City's Department of Licenses and Inspections (Department) sent out a form letter to four of the above-named liquor licensees (EURS Corporation; 14,000 Siblings, Inc.; 1916 Delaware Tavern, Inc.; and Teazers, Inc.),[5] therein informing them that "the bare skin exposed by your employees providing artistic entertainment, does not conform to the provisions of the Zoning Code of the City of Philadelphia, specifically, Section 14–1605." (Exhibit "I" to Trial Court's June 8, 1994 Argument Transcript, Supp. R.R. 1b.) Further, he informed the Licensees that the Department intended "to issue a Cease Operations Order within the next seven (7) days based upon the violations in that Section of the Zoning Code." (Exhibit "I" to Argument Transcript, Supp.R.R. 2b.)

The four Licensees then applied to the Department for use registration permits authorizing their respective adult entertainments. Although not recipients of the form letter, the Emerald Club and the Race Street Cafe also applied to the Department for use registration permits to establish similar operations. After the Department denied all of the permit requests, the Licensees appealed to the City's Zoning Board seeking variances.

As noted above, the Board made the following determinations:

| | |
|---|---|
| 1916 Delaware Tavern: | temporary variance granted; |
| Carney's: | variance denied; |
| 14000 Siblings: | temporary variance granted; |
| EURS Corporation: | variance denied; |
| Teazers, Inc.: | variance denied; |
| Emerald Club: | (Somerton Civic Association appeal), temporary variance granted; |
| Race Street Cafe: | (Chinese Gospel Church appeal), variance granted. |

In a July 15, 1994 memorandum opinion, the trial court considered the appeals filed and determined that the City's Zoning Code was preempted by the Liquor Code and that, thus, the Board's rulings were, in effect, ultra vires. The parties made timely appeals of the trial court's rulings to this Court.

## ISSUE

The basic issue before us is whether the trial court improperly held that, with regard to cabarets holding liquor licenses, Section 14–1605 of the City's Zoning Code was entirely preempted by the Liquor Code. Where, as here, the trial court took no additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *McClimans v. Board of Supervisors of Shenango Township,* 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987).

## DISCUSSION

### A. City's Power to Regulate Notwithstanding the Liquor Code:

Our Supreme Court has held as follows with regard to preemption:

> The state is not presumed to have preempted a field merely by legislating in it. The General Assembly must clearly show its intent to preempt a field in which it has legislated.... The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate[ ] an intention on the part of

---

**4.** The Chinese Gospel Church filed its own brief in this matter (No. 2170 C.D.1994). Unlike the other parties, it argues that Race Street Cafe waived the preemption issue by failing to raise it below. Because we decide here that the City's

Section 14–1605 is *not* preempted by the Liquor Code, we need not address the waiver issue.

**5.** (Trial Court's June 8, 1994 Argument Transcript at 10, R.R. 80a.)

the legislature that it should not be supplemented by municipal bodies....' If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted....

*Council of Middletown Township v. Benham,* 514 Pa. 176, 180, 523 A.2d 311, 313 (1987) (citations omitted).

■ On September 27, 1994, the General Assembly passed Act 77 amending the Liquor Code, which former Governor Casey signed into law on October 5, 1994. The General Assembly amended the Liquor Code to provide as follows:

Section 493.1 Rights of Municipalities Preserved. Nothing in this Act [the Liquor Code] shall be construed to preempt the right of any municipality to regulate zoning and enforce any other local ordinances and codes dealing with health and welfare issues.

47 P.S. § 4–493.1. Thus, the City argues that, if the General Assembly did not make it clear before, local zoning restrictions definitely are not preempted by the Liquor Code now. We agree.

The Licensees, however, argue that Section 493.1 of the Code,[6] should not be applied retroactively because under Section 1926 of the Statutory Construction Act, "[n]o statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. Section 493.1 specifically provides that it is to become effective in thirty days. (House Bill 103, Act 77 of 1994, R.R. 66a.) Having found no clear intention on the part of the General Assembly for retroactive application,[7] we

conclude that Section 493.1 should not be applied to the case before us. Thus, we must examine the situation as it existed before that amendment.

■ Prior to that amendment, the Liquor Code was silent on the issue of preemption. Therefore, in a *tax* case involving a liquor distributor, *Commonwealth of Pennsylvania v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397 (1986), our Supreme Court analyzed the provisions of the relevant acts at issue in order to ascertain the General Assembly's intent with regard to preemption. The Court considered the issue of whether the Liquor Code was such a comprehensive legislative regulation of the liquor industry that the City of Harrisburg was prohibited from imposing a city business privilege and mercantile tax on a malt and brewed beverage distributor. The Court concluded as follows:

[T]he legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverage industry, that it has 'preempted the field' to the exclusion of all interference from subordinate legislative bodies. Such pre-emption by the legislature bars local legislative control by regulation or taxation.

*Id.* at 224, 519 A.2d at 402. Significantly, however, the Court also concluded that, despite the *Code's* preemption of the liquor field, municipalities could still exercise appropriate zoning controls over liquor licensees.[8]

Here, the Licensees concede that, even before the amendment, local legislative bodies had the right to exercise zoning controls over liquor licensees. (Licensees' Brief at 26.)[9] Thus, even though we conclude that

---

6. 47 P.S. § 4–493.1.

7. Retroactive legislation is so offensive to the Anglo Saxon sense of justice that it is never favored. A statute will not be given retroactive effect unless such construction is required by explicit language or by necessary implication. *Appeal of Sawdey,* 369 Pa. 19, 22, 85 A.2d 28, 30 (1951) (citation omitted).

8. In a recent case, which involved an attempt by a municipality to impose a use and occupancy tax on a liquor licensee, we relied upon *Wilsbach* and decided that the preemptive nature of the Liquor Code precluded a local municipality from

imposing taxes on the privilege to operate a malt and brewed beverages distributorship. We again emphasized, however, that local municipalities retain a right to exercise appropriate zoning controls over liquor licensees. *Wissinoming Bottling Co. v. School District of Philadelphia,* —— Pa.Commonwealth Ct. ——, 654 A.2d 208 (1995), *petition for reargument denied,* (March 7, 1995).

9. *See Wilsbach; Sawdey Liquor License Case,* 369 Pa. 19, 85 A.2d 28 (1951) (holding that municipalities may entirely exclude hotels and taverns from residential districts, but they may not in the guise of a zoning ordinance prohibit a hotel from dispensing liquor in an area where such business

Section 493.1 should not be applied retroactively, in reality, that holding makes little difference in our disposition of this case. Despite the fact that the liquor industry remains highly regulated by the Commonwealth, local municipalities even before October 5, 1994 had the power to promulgate and enforce appropriate liquor-neutral zoning controls.

At the heart of this case is the Licensees' argument that the City ordinance at issue is not a zoning regulation, but instead, a regulation directly related to subjects properly within the purview of the Liquor Code. Therefore, having decided that the City has limited power to regulate a liquor licensee, we must next examine whether Section 14–1605 is in fact an appropriate liquor-neutral zoning control.

### B. Section 14–1605 as "Appropriate Zoning Control:"

■ Licensees argue that Section 14–1605 of the City's Zoning Code is not an appropriate liquor-neutral zoning control because it does not regulate the *location* of an establishment, but instead, the *behavior* permitted inside of the establishment. They argue that the City is in essence creating a clothing standard for entertainers in establishments that serve liquor and thus, is attempting to usurp the Commonwealth's role in the protection of the public's morality as set forth in Sections 104 and 493(10) of the Liquor Code:

#### § 1–104. Interpretation of act

(a) This act [Liquor Code] shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and *morals* of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose.

#### § 4–493. Unlawful acts relative to liquor, malt and brewed beverages and licensees

It shall be unlawful—

. . . .

(10) [F]or any licensee, under any circumstances, to permit in any licensed premises any *lewd, immoral or improper entertainment,* regardless of whether a permit to provide entertainment has been obtained or not. . . .

47 P.S. §§ 1–104 and 4–493(10) (emphasis added).

The City argues that, merely because the Liquor Code purports to be an instrument to protect the public's morals (47 P.S. § 1–104) and prohibits lewd, immoral or improper entertainment in any licensed premises (47 P.S. § 4–493(10)), that does not mean that local governments are preempted from applying their zoning laws to adult entertainment establishments that sell liquor. Among other cases, the City cites *Philm Corporation v. Washington Township,* 162 Pa.Commonwealth Ct. 126, 638 A.2d 388 (1994) in support of its position.

*Philm* involved an establishment which, over the years, had been operated as a restaurant/tavern by several different owners using a variety of names. "The premises have always been licensed by the Pennsylvania Liquor Control Board with an amusement permit." *Id.* at 129, 638 A.2d at 389. At issue was a new operation called "The Fox," which "presented live go-go dancers who entertain[ed] continuously in two hour sets every day except Sunday from 12:00 noon to 12:00 midnight." *Id.*

The trial court found that no owner had presented live entertainment on the premises for more than five years prior to the opening of The Fox and that, thus, Philm Corporation had to apply for a variance to the township in order to continue the non-conforming use in the R–2 residential district. We affirmed, concluding that the township was not attempting to usurp the Liquor Control Board's regulatory role by attempting to limit the hours of the show, for example, "but

is permitted); *Three Rivers Aluminum Company v. Brodmerkle,* 119 Pa.Commonwealth Ct. 409, 416, 547 A.2d 814, 817 (1988) (holding that "while a municipality may not seek to regulate directly the sale of liquor by zoning, it is also true that where the dispensation of food and liquor to the general public is not a permitted use in that zoning district, such activity can be enjoined"); *and* Robert S. Ryan, Pennsylvania Zoning Law and Practice § 3.3.14.

[was] lawfully enforcing its zoning regulations regarding the use of non-conforming premises." *Id.*, 162 Pa.Commonwealth Ct. at 134, 638 A.2d at 392.

We agree with the City that merely because the General Assembly intended for the Commonwealth by virtue of the Liquor Code to regulate morality and lewdness,[10] that does not mean that local municipalities are precluded from exercising zoning controls over establishments thought by some to be potentially lewd and/or immoral. As long as the zoning regulations are liquor-neutral as in *Philm*, liquor licensees should not be able to elude zoning regulations and be in any better position than "dry" establishments merely by virtue of a license to serve alcohol.[11]

The Licensees additionally argue that the trial court correctly found preemption because the Liquor Control Board's regulation of and control over entertainment in a licensed establishment is complete and exhaustive. They point out that, before a licensee may permit dancing, it must obtain an amusement permit subject to specific requirements and conditions. 47 P.S. § 4–493(10). Further, the Liquor Code contains a laundry list of unlawful acts by licensees. 47 P.S. § 4–493. Thus, the Licensees argue that because the Liquor Board's regulations govern all aspects of entertainment, including location, form, hours and age of participants, local governments are preempted from attempting to regulate the entertainment.

Further, the Licensees note that, although it is permissible for local municipalities to require liquor licensees to comply with fire and electrical codes, for example, they cannot regulate the details of a liquor licensee's business within the purview of the Code. *Sawdey Liquor License Case*, 369 Pa. 19, 85 A.2d 28 (1951). Licensees contend that the

detail within the purview of the Code sought to be regulated here is the clothing worn by the entertainers which, according to the Licensees, falls under the umbrella of an amusement permit issued by the Commonwealth.

The City responds that even the Chairman of the Liquor Control Board, James A. Goodman, agrees with the City's position regarding the effect of amusement permits issued by the Commonwealth. Chairman Goodman stated as follows in a letter to the trial court:[12]

[T]he [Liquor Control] Board concludes that the regulation of entertainment is not preempted by the [Liquor Control] Board's authorization through permit of entertainment on a licensed premises.

(R.R. 68a.) Thus, the City argues that, as the agency charged with enforcement, the Liquor Board's construction of a statute should be given great deference. *Longo Liquor License Case*, 183 Pa.Superior Ct. 504, 132 A.2d 899 (1957).

Granted, the Liquor Code and regulations promulgated thereto seem to cover virtually all imaginable aspects of entertainment. We note, however, that the existence of an amusement permit in the *Philm* case did not preclude the trial court from affirming a township's power to enforce its liquor-neutral zoning regulation.

After having considered the Licensees' arguments that the City's ordinance at issue improperly infringes upon the territory of the Liquor Code, we conclude that the Licensees' characterization of Section 14–1605 as a liquor regulation is erroneous. In a First Amendment case, *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Detroit City Council, like the Philadelphia City Council in the case

---

10. *E.g. In re Tahiti Bar, Inc.*, 395 Pa. 355, 150 A.2d 112 (1959); *Commonwealth v. DiMarco*, 26 Pa.Commonwealth Ct. 504, 364 A.2d 755 (1976).

11. *See also, Brigco II, Inc. v. Zoning Hearing Board of the Borough of Lansdale*, —— Pa.D. & C.4th ——, (No. 93–07614, Montgomery County, filed May 13, 1994), *aff'd*, —— Pa.Commonwealth Ct. ——, 657 A.2d 143 (1995).

12. Here, we are reviewing this case as if the trial court took no additional evidence. *McClimans v. Board of Supervisors of Shenango Township*, 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987). We have considered Chairman Goodman's opinion to be a statement of a legal position and not an evidentiary fact. Because we do not find the Chairman's opinion to be controlling in this case, we conclude that the scope of review as set forth in *McClimans* is still correct.

before us, sought to regulate the location of certain regulated uses (i.e. adult motion picture and mini theaters, adult bookstores and cabarets) which the Council believed had a deleterious effect upon adjacent areas.[13] Even though the definitions contained in the regulation were similarly specific as to sexual activities and anatomical areas,[14] the United States Supreme Court characterized it as a zoning regulation.[15]

Here, the City is properly attempting to enforce a zoning regulation related to the location, not only of cabarets, which might or might not sell alcoholic beverages, but also of other establishments such as adult book stores and theaters, which do not. Although City Council's definition of cabaret does indeed include descriptions of how much cloth entertainers must wear or, as the case may be—not wear, in order to qualify an establishment as a cabaret, Council in that section also specifically outlines permissible and prohibited locations for *all* cabarets *whether or not licensed by the Liquor Control Board* with a view to concerns about matters of public health and welfare, aesthetics, economics, crime and neighborhood deterioration. Thus, the regulation which does not prohibit cabarets, whether with or without licenses, but which merely places them in specific geographic locations in the City, has not been preempted by the Liquor Code.

### CONCLUSION

We conclude that the City in its Zoning Code did not interfere with matters within the purview of the Liquor Code, but instead, addressed zoning control subjects properly within the City's domain. Therefore, for the above reasons, we reverse the trial court's orders in the above-captioned matters.

In determining the relief to be granted by this Court, we note that both the City and the Chinese Gospel Church requested that we remand these matters for review of the merits of the variance requests *without* respect to the Liquor Code. Thus, we remand for a determination of whether any of the Licensees are entitled to a variance on any grounds not related to the Liquor Code and not addressed by the trial court.

Upon reviewing the record, we note that the Zoning Board considered traditional variance grounds and made specific findings of fact and conclusions of law in the Chinese Gospel Church's appeal. (Chinese Gospel Church's R.R. at 66–73a.) In the other six cases, however, it is virtually impossible to ascertain from the Board's decisions what variance grounds it considered in making the determinations. Therefore, in light of the specific findings of fact and conclusions of law made by the Board in the Chinese Gospel Church appeal, we direct that that case be remanded to the trial court. With regard to the other six cases, where specific findings and conclusions sufficient for appellate review were not made, we direct that those cases be remanded to the trial court with directions to remand them to the Board so that the Board may make specific findings and conclusions pursuant to Section 14–1802(1) of the City's Zoning Code, which contains the grounds necessary for the grant of a variance in Philadelphia.

### ORDER

AND NOW, this 28th day of March, 1995, the orders of the Court of Common Pleas of Philadelphia County are hereby reversed and the above-captioned matters are remanded for a determination of whether any of the Licensees are entitled to a variance on any grounds not related to the Liquor Code. With regard to No. 2170 C.D.1994, where the Board made specific findings of fact and conclusions of law, we direct that that case be remanded to the trial court. With regard to the other six cases, where the Board did not make specific findings and conclusions, we direct that those cases be remanded to the trial court with directions to remand them to the Board so that the Board can make specific findings and conclusions pursuant to Section 14–1802(1) of the City's Zoning Code.

Jurisdiction relinquished.

---

13. *Young,* 427 U.S. at 54–5, 96 S.Ct. at 2444–45.

14. *Id.* at 54, 96 S.Ct. at 2444.

15. *Id.* at 52 and 60, 96 S.Ct. at 2443 and 2447.