1400 North Third Street     :
Enterprises, Inc.      :
             :
     v.       :
             :
The City of Harrisburg    :
License and Tax Appeal Board, : No. 1363 C.D. 2016
      Appellant : Argued: June 5, 2017


BEFORE: HONORABLE ROBERT SIMPSON, Judge
     HONORABLE ANNE E. COVEY, Judge (P.)
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY        FILED: November 29, 2017


    The City of Harrisburg's (City) License and Tax Appeal Board (Appeal Board) appeals from the Dauphin County Common Pleas Court's (trial court) July 11, 2016 order vacating the Appeal Board's decision upholding the City's nonrenewal of 1400 North Third Street Enterprises, Inc.'s (Licensee) Business and Mercantile License (License) for the year 2016.[1]  There are three issues before this Court: (1) whether the Liquor Code[2] preempts the City's authority to revoke the License based on criminal activity at or near Licensee's premises; (2) whether the trial court erred by concluding that the Appeal Board's decision was not supported by substantial evidence; and, (3) whether the trial court failed to properly apply the Local Agency Law,[3] and usurped the Appeal Board's authority as fact-finder.  After review, we affirm.

---

[1] The License is established under Chapter 5-715 of the City's Codified Ordinances, titled Business Privilege and Mercantile Tax.

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.

[3] 2 Pa.C.S. §§ 551-555, 751-754.

Licensee holds the License, a city health license and a liquor license issued by the Pennsylvania Liquor Control Board (PLCB) for Third Street Café (Third Street Café, Premises), located at 1400 North 3rd Street in the City. On December 1, 2014, upon receipt of Licensee's annual renewal application, the City issued Licensee a 2015 License. Pursuant to Section 5-715.8 of the City's Codified Ordinances (the Ordinance)[4] and Section 109 of the City's Business and Mercantile Tax Regulations (Regulation 109),[5] the "License/Permit" contains the following

---

[4] The Ordinance (contained in the City's Codified Ordinances, Chapter 5-715, titled "Business Privilege and Mercantile Tax") provides:

> A. Any person desiring to conduct, or to continue to conduct, any business within the City shall file with the Business Administrator or designee an application for a business privilege and mercantile license and shall pay a fee of $40 for the license and $40 for each renewal thereof. . . .
>
> B. The issuance of a business privilege and mercantile license is predicated upon the applicant first receiving the approval of the Zoning Administrator and/or Health Officer, where applicable, for the operation of his or her business.
>
> C. Regardless of whether or not a license is procured, the tax required to be paid pursuant to this chapter is due if a person operates a business within the City. **Regardless of whether or not a business is exempt from paying the tax, a person or entity who operates a business within the City shall obtain a mercantile license.**
>
> D. **Any mercantile/business privilege license issued by the City is subject to revocation by the issuing authority upon a determination that the licensee has violated one or more provisions of the Codified Ordinances of the City.**
>
> E. Any person whose license is subject to revocation shall have the right to request an administrative hearing before the Business Administrator within 10 days of the notice of violation and prior to revocation. The decision of the Business Administrator may be appealed in accordance with the Local Agency Law.

City's Codified Ordinance, § 5-715.8 (emphasis added).

[5] Regulation 109 states in pertinent part:

> The Business Privilege and Mercantile License may be suspended or revoked at any time by the Mayor or designee if it is determined that

2

notification: "All licenses and permits may be suspended or revoked at any time by the Mayor or his designee if it is determined that the holder of the license secured the same by misrepresentation . . . consent to or allowed any behavior which would constitute a crime under federal, state or local laws, including, but not limited to drug trafficking or drug possession . . . or allowed any manner or form of public nuisance." Reproduced Record (R.R.) at 192a.

On March 27, 2015, the City's Tax and Enforcement Administrator sent Licensee a Notice of Revocation of Business License (Notice). The Notice stated, in relevant part:

> The grounds for the revocation of your license stem from multiple incidents as logged by the [City's] police department in which this establishment allowed behavior which constituted a crime(s) under federal, state or local laws, including, but not limited to, drug trafficking or drug possession; committed an act(s) of gross negligence, or allowed any manner or form of public nuisance.
>
> Section[s] 101 and 109 of the [City's Business and Mercantile Tax Regulations] recite several events and/or conditions which trigger suspension or revocation of a license. Under the provisions, we may revoke a license upon an assessment that the holder . . . consented to or allowed any behavior which would constitute a crime under federal, state or local laws, including but not limited to drug possession; committed an act of gross negligence, or allowed any manner or form of public nuisance.

---

the holder of the permit or license . . . consented to or allowed any behavior which would constitute a crime under federal, state, or local laws, including, but not limited to drug trafficking or drug possession . . . or allowed any manner or form of public nuisance.

To allow for proper due process, the [Appeal Board] is hereby authorized to handle any pre-depravation [sic] and/or appeals from the license and permit holders. A record shall be made of all hearings in order to preserve such for any appeals to the Courts.

Regulation 109.

> Under the [Optional] Third Class City . . . [C]harter [L]aw[6] [(Charter Law)] (upon which the governance of the [City] is based), it is specifically within the power of the Mayor (or those to whom the Mayor delegates the responsibility) to suspend or revoke any and all permits and licenses issued by the City.

R.R. at 197a.

On April 3, 2015, Licensee appealed from the revocation. The Appeal Board held a hearing on May 20, 2015. In advance of the hearing, the City provided Licensee with ten police reports pertaining to incidents requiring police involvement at or near the Premises. During the hearing, Licensee's counsel objected to various statements and to the police reports as hearsay. Licensee's counsel argued, based on case law, that "hearsay evidence admitted without objection can be given its natural probative effect and may support a finding of fact if it's corroborated by any competent evidence in the record; but a finding of fact based solely on hearsay will not stand." Notes of Testimony, May 20, 2015 (N.T.) at 26. In response, City's counsel distinguished the cited cases and argued:

> Under the Pennsylvania [C]ode[,] the definition of agency -- regarding the standard rules for hearings – the definition of agency expressly excludes political subdivisions.
>
> So the rules do not apply to political subdivisions. And you cannot glean that the Court determined because there are rules from a State agency under its mandate for its statute that the same apply to the local government proceedings, which tend to be informal in nature.

*Id.* Later, in response to Licensee's counsel's hearsay objection to police testimony from other officers' police reports, City's counsel argued:

> We are not involved in the constitutional rights of a citizen. We are involved in a business license, which is a separate and distinct thing. We are involved in an application for a

---

[6] Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625.

4

government privilege which has on the application the right to be revoked for certain things. . . . If we were in a criminal trial, the rules would be very different; but we are not in a criminal trial.

And rightfully so, because if local governments had to meet that standard simply to manage their day-to-day affairs, local governments couldn't operate. The legislature did not intend when it gave us the power to have hearing boards, have revocations, have licensing to have those requirements for each and every thing we do.

*Id*. at 44-45.

Licensee's counsel also objected to the City Police Chief's testimony regarding several additional alleged incidents occurring at or near the Premises based on the City's failure to provide notice and/or documentation thereof. In response, City's counsel stated: "You have no right to notice of those occurrences, you have no right to discovery." N.T. at 28.[7] The Appeal Board noted Licensee's objection and

---

[7]We acknowledge, this Court has explicitly stated: "While . . . local agencies are not bound by technical rules of evidence, **findings based solely on hearsay cannot stand**." *Goodman v. Commonwealth*, 511 A.2d 274, 277 (Pa. Cmwlth. 1986) (emphasis added). Although the City argues in its reply brief that Licensee waived its hearsay objections because it "did not raise the issue of hearsay in [its] general statement of objections to the [Appeal] Board's Decision in the [t]rial [c]ourt nor did [it] raise the issue in [its] brief below[,]" the trial court's opinion and Licensee's trial court brief demonstrate otherwise. City Reply Br. at 9. The trial court specifically noted that "[Licensee] raises a number of additional issues in support of [its] appeal. [Licensee] argues constitutional and **hearsay issues**, and a conflict of interest by one of the [Appeal B]oard members." Trial Court Op. at 12 (emphasis added). Further, Licensee specifically raised the hearsay issue relative to the December 15, 2015 police report to the trial court. *See* R.R. at 304a. Licensee did not object on hearsay grounds to the other police reports since those reports were offered at the May 20, 2015 hearing pertaining to the 2015 revocation and Licensee argued that those reports should not be admitted. Nonetheless, because Licensee raised the hearsay issue to the Appeal Board, the trial court and this Court, it was clearly preserved and, thus, not waived.

We also recognize that although the Local Agency Law does not provide for discovery, the representation by City's counsel that Licensee is not entitled to **notice** of the occurrences which form the basis for nonrenewal is incorrect. This Court has stated:

While incapable of exact definition, the essential elements of procedural due process are 'notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause.' *Fiore v. Bd. of Fin.*

*& Revenue*, . . . 633 A.2d 1111, 1114 ([Pa.] 1993) (quotations omitted). Whether due process has been afforded must be examined in relation to the particular circumstances of each case. *Dunn v. Dep't of Transp., Bureau of Motor Vehicles*, 819 A.2d 189, 192 (Pa. Cmwlth. 2003.) 'Notice is the most basic requirement of due process. . . . Notice should be reasonably calculated to inform interested parties of the pending action. . . . The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice.' *Pa. Coal Mining Ass'n v. Ins. Dep't*, . . . 370 A.2d 685, 692-93 ([Pa.] 1977). 'Failure to provide adequate notice is a jurisdictional defect that invalidates administrative action until the defect is cured.' *Clark v. Dep't of Pub. Welfare*, . . . 427 A.2d 712, 713 ([Pa. Cmwlth.] 1981); *see also* 2 Pa.C.S. § 553 ('No adjudication **of a local agency** shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.').

*Bornstein v. City of Connellsville*, 39 A.3d 513, 519 (Pa. Cmwlth. 2012) (emphasis added). "Adequate notice for procedural due process purposes requires ***at a minimum* that the notice contain a sufficient listing and explanation of the charges against an individual.**" *Dunn*, 819 A.2d at 193 (bolded emphasis added). Further, our Supreme Court has explained:

Generally speaking a license granted by a sovereign is 'a permission by a competent authority to do some act which without such authorization would be illegal. . .' Black's Law Dictionary (Rev'd. 4th [e]d. 1968). Government licenses generally constitute a form of property insofar as they are an entitlement to engage in a valuable activity. The grant of certain types of licenses, particularly a license to engage in a profession or occupation, may create a right or entitlement which triggers procedural rights under the due process clause of the Fourteenth Amendment. **The government cannot, on the one hand, create a business which is dependent on a permit and then, with the other, destroy it by revoking the authorizing permits without first affording 'sufficient' due process.** *Doran v. Houle,* 516 F.Supp. 1231 (D. Montana 1981) (citing *Standard Airlines, Inc. v. Civil Aeronautics B*[*d.*]*,* 177 F.2d 18 [D.C.Cir. 1949]; *Gonzalez v. Freeman,* 334 F.2d 570 [D.C. 1964]). Thus, the government must have a fair procedure to determine whether driver's, occupational or business licenses should be revoked.

*Young J. Lee, Inc. v. Dep't of Revenue, Bureau of State Lotteries*, 474 A.2d 266, 270 (Pa. 1983) (emphasis added). Moreover, Regulation 109 acknowledges the need for due process, wherein it states: "**To allow for proper due process**, the [Appeal Board] is hereby authorized to handle any pre-depravation [sic] and/or appeals from the license and permit holders. A record shall be made of all hearings in order to preserve such for any appeals to the Courts." Regulation 109. Given our

permitted the testimony. On August 28, 2015, the Appeal Board upheld the City's revocation of Licensee's 2015 License (2015 Revocation Decision). Licensee appealed from the 2015 Revocation Decision to the trial court. In December 2015, the City notified Licensee that it would not renew the License for the 2016 calendar year. *See* R.R. at 29a-30a. In January 2016, the City abandoned its efforts to revoke Licensee's 2015 License,[8] but pursued the nonrenewal of Licensee's 2016 License (2016 Nonrenewal).

Licensee filed a motion to stay enforcement action and a motion to dismiss the 2016 Nonrenewal, alleging that the Liquor Code preempts the Ordinance and Regulation 109. On February 16, 2016, the Appeal Board held a hearing on Licensee's motions. At the hearing, the Appeal Board granted Licensee's motion to stay enforcement, but denied Licensee's motion to dismiss. Thereafter, Appeal Board Chairman Dan A. Schulder informed the parties that there would be a hearing on the merits of the motion to stay enforcement as follows:

> [W]e are going to take additional evidence with regard to the [2016 Nonrenewal] and I'm going to advise the parties that the [Appeal] Board intends to make all the evidence presented at the May 20th, 2015 hearing part of the record on the present appeal.

---

disposition of this matter, we need not resolve the due process issue. However, we note our strong disapproval of the City's position.

[8] On January 7, 2016, the trial court dismissed the appeal as moot. The trial court's order stated, in relevant part:

> [B]y failing to renew [Licensee's] 2016 [License] while the City's action to revoke [Licensee's] 2015 [L]icense is still pending[,] the City has abandoned the 2015 [License] revocation action and rendered such action moot. . . . At a meeting with [Licensee's] Counsel, [] City's Counsel and this Court on January 4, 2016, [City's Counsel] agreed that the 2015 [License] revocation action was now moot. . . . Accordingly, the action . . . shall be dismissed as moot.

Original Record (O.R.), Item No. 1, Appellant's Emergency Motion for Stay Pending Appeal, Ex. A at 2.

7

R.R. at 52a.

On March 21, 2016, the Appeal Board held its hearing on the 2016 Nonrenewal. At the hearing, in addition to the evidence presented at the May 20, 2015 hearing, the City presented evidence of an additional incident involving a shooting near the Premises on December 15, 2015.[9] Subsequent to the hearing, Licensee filed a recusal motion and a supplemental recusal motion after it learned that an Appeal Board member had failed to disclose her interests in establishments holding liquor licenses in the Premises' vicinity, and that she failed to disclose an ongoing relationship and cohabitation with one of the officers who reported on the December 15, 2015 shooting.

On May 17, 2016, the Appeal Board denied Licensee's appeal, concluding that the Liquor Code did not preempt Regulation 109, Licensee received due process, the police reports were properly admitted into evidence, Licensee consented to or allowed behavior constituting crimes and a public nuisance, and the City had properly refused to renew the 2016 License. The Appeal Board further ruled that it lacked authority to grant the recusal request, there was an insufficient basis for recusal and, even if the challenged member recused, the decision would not change. Licensee appealed from the Appeal Board's decision to the trial court. On July 11, 2016, the trial court, based on the record below, sustained Licensee's appeal because Section 611 of the Liquor Code preempts the City's nonrenewal of Licensee's 2016 License. The trial court further held that the Appeal Board's decision was not based on substantial evidence.[10] The City appealed to this Court.[11]

_____

[9] At the March 21, 2016 hearing, City's counsel argued that the Appeal Board's findings of fact in its 2015 Revocation Decision relative to the City's police incidents were conclusive since Licensee failed to appeal from that dismissal.

[10] Given its disposition of Licensee's appeal, the trial court found it unnecessary to address Licensee's other alleged errors, including due process violations, improper use of hearsay and bias.

[11] The law is well-established:

8

The City first contends that the trial court erred when it held that Section 611 of the Liquor Code preempted the City's nonrenewal of Licensee's 2016 License based upon nuisance activity at the Premises. We disagree. Our Courts have previously addressed Liquor Code preemption in numerous cases. We review these prior holdings for guidance.

In *Commonwealth v. Wilsbach Distributors, Inc.*, 519 A.2d 397 (Pa. 1986),[12] our Supreme Court also addressed issues of Liquor Code preemption pertaining to the City's Business Privilege and Mercantile Tax ordinance. A distributor licensed under the Liquor Code was found guilty of a summary offense when it refused to pay the City's Business Privilege and Mercantile Tax on the basis that its PLCB-licensed status rendered it exempt. The Court reversed and dismissed the citations, explaining:

> Our review of the Liquor Code and regulations promulgated thereunder indicate the legislature's clear intent to regulate in plenary fashion every aspect of the alcoholic beverage industry. **Every phase**, from manufacture to sale and disposition is subject to the **exclusive control** of the State **through its designated arm of enforcement**, the [PLCB].[13]

---

> When the trial court does not take additional evidence, our scope of review of a local agency's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence. An agency abuses its discretion when its findings of fact are not supported by substantial evidence.

*Kuziak v. Borough of Danville*, 125 A.3d 470, 474 n.2 (Pa. Cmwlth. 2015) (citation omitted).

[12] *Wilsbach* is a plurality opinion.

[13] As of July 1, 1987, the Liquor Code vested enforcement authority in the Pennsylvania State Police, Bureau of Liquor Control Enforcement. *See* Section 211 of the Liquor Code, 47 P.S. § 2-211, added by § 14 of the Act of June 29, 1987, P.L. 32. However, the PLCB remained empowered to license establishments to sell liquor and/or malt or brewed beverages. *See* Section 207 of the Liquor Code, 47 P.S. § 2-207.

As our decisions have made clear, there is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. The state is vested with the sole authority to determine whether alcoholic beverages, their manufacture, gift, purchase, sale, possession or transportation shall be permitted or prohibited within its borders.

The power of prohibition includes the lesser power of regulation and a state may adopt such measures as are reasonably appropriate or needful to render the exercise of that power effective. In view of the virtually absolute control over the business of dispensing alcoholic beverages, **it is clear that the conduct of such business is lawful only to the extent that it is made so by the Liquor Code.**

In the exercise of its legitimate state interest, the Commonwealth, through the [PLCB], directly controls what beverages may be bought or sold in the Commonwealth, who may sell on the retail and wholesale level, for what prices beverages may be sold and bought from the State, and to issue licenses to distributors and wholesalers so that they may sell to consumers through its [PLCB]. The Commonwealth controls not only the geographical location of all its licensees, but also the physical structures in which beverages may be kept and sold. The site of *every* licensed premise in the Commonwealth is exclusively within the discretion of the [PLCB]. The only concessions to municipalities is their right to exclude any or all classes of licensees (i.e., dry municipalities), . . . and to exercise appropriate zoning controls.

Enforcement of the [Liquor] Code and its regulations is vested in the [PLCB]. The [PLCB] and its investigative staff are vested with the full police power to enter any licensed establishment and check for violations of the [Liquor] Code, and, if necessary, to arrest violators of the [Liquor] Code and its regulations, and to seize unlawfully obtained beverages in plain view, without warrant.

As part of the legislature's regulatory scheme, fees are imposed for the privilege of obtaining and keeping licenses issued by the [PLCB]. These fees are collected for the benefit of the municipalities in which the licensed

establishments are located and are rebated by the Commonwealth to those municipalities.

Finally, indicative of the Commonwealth's plenary exercise of control over the alcoholic beverage industry are the extensive taxes imposed on all sales of alcohol on the local and retail levels. Considerable revenues are generated for the Commonwealth by its operation of the State Liquor Stores and the additional taxes imposed on purchases and sales of alcoholic beverages. In addition to the revenues generated by the operation of the State Liquor Stores and license fees collected pursuant to the provisions of the [Liquor] Code, the Commonwealth also raises revenue by its imposition of four other taxes on all sales and purchases of alcoholic beverages.

*Wilsbach*, 519 A.2d at 400-01 (emphasis added; citations and footnotes omitted).

The *Wilsbach* Court concluded:

The regulatory scheme now under review controls a public, state-run monopoly, maintained for the health, welfare and safety of the citizens of this Commonwealth and upon which the Commonwealth depends for substantial revenues. Such pervasive control over all phases of the liquor industry, along with the extensive taxation and fees imposed, indicates the legislature's intent to control this industry and to receive all the benefits inherent by regulating the industry, including raising revenues through regulation to the exclusion of all local attempts to interfere with the state regulation by imposing taxes on a local level.

We conclude that the legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverage industry, that it has 'pre-empted the field' to the exclusion of all interference from subordinate legislative bodies. **Such pre[]emption by the legislature bars local legislative control by regulation or taxation.**

The Business Privilege and Mercantile Tax imposed on [the a]ppellant is a tax on its privilege to conduct a distributorship within the City of Harrisburg. This privilege is granted by the [s]tate, is absolutely controlled by the [s]tate, and not the City of Harrisburg, through fees, regulations and taxes, and is, thus, an improper subject for the City to tax.

11

*Id.* at 402 (emphasis added).

In 1994, the General Assembly amended the Liquor Code to provide: "Nothing in [the Liquor Code] shall be construed to preempt the right of any municipality to regulate zoning and enforce any other local ordinances and codes dealing with health and welfare issues." Section 493.1(a) of the Liquor Code, 47 P.S. § 4-493.1(a) (1994 Amendment).[14]

In *Wissinoming Bottling Co. v. School District of Philadelphia*, 654 A.2d 208 (Pa. Cmwlth. 1995), *aff'd by evenly divided court,* 672 A.2d 279 (Pa. 1996), this Court relied on *Wilsbach* and held that the City of Philadelphia was preempted from collecting use and occupancy (U & O) taxes from PLCB-licensed distributors. The *Wissinoming* Court reasoned:

> Our Supreme Court has held that the [c]ity's U & O tax is a tax on the privilege of using real estate for business purposes. A malt and brewed beverages distributorship cannot be operated at all unless it occupies and uses real estate. A distributor must operate in a location and on real estate approved by the Commonwealth, and approval of the premises used for such distributorship is an integral part of the licensing process. The U & O tax, thus, directly impacts on [the licensee's] privilege to operate a distributorship. Therefore, because the privilege of operating a malt and brewed beverages distributorship is granted by the Commonwealth and cannot be taxed or regulated by the [c]ity, we hold that the [c]ity's U & O tax is preempted by the Liquor Code and by the taxes of alcoholic beverages enacted by the Commonwealth, *Wilsbach,* and that the trial court correctly granted [the licensee's] motion for summary judgment.

*Wissinoming,* 654 A.2d at 212. The Court further expounded:

> *Wilsbach* . . . preempted local taxes imposed on the privilege of operating a beer distributorship; it did not

---

[14] Section 493.1 of the Liquor Code was added by Section 8 of the Act of October 5, 1994, P.L. 522. Later amendments moved the relevant language to subpart (a) and added subparts (b), (c) and (d).

12

merely proscribe local taxes on a distributorship's sales. Hence, regardless of whether a municipality taxes a distributorship's gross volume of business, as Harrisburg did in *Wilsbach,* or taxes the physical space occupied by a distributorship, the municipality is imposing a tax on the privilege of operating a distributorship within its territory.

*Wissinoming,* 654 A.2d at 212.

In *1916 Delaware Tavern, Inc. v. Zoning Board of Adjustment*, 657 A.2d 63 (Pa. Cmwlth. 1995), this Court held that the Liquor Code did not preempt Philadelphia's Zoning Code where adult entertainment establishment liquor licensees were denied use variances or granted temporary use variances pursuant to a Philadelphia Zoning Code provision regulating the location of such businesses. In addressing the matter, the Court refused to retroactively apply Section 493.1 of the Liquor Code. It noted, however, that its refusal to apply the 1994 Amendment "makes little difference in our disposition of this case. Despite the fact that the liquor industry remains highly regulated by the Commonwealth, local municipalities even before October 5, 1994 had the power to promulgate and enforce appropriate liquor-neutral zoning controls." *1916 Delaware,* 657 A.2d at 68.

In upholding the City of Philadelphia's application of the relevant zoning provision, this Court explained:

[M]erely because the General Assembly intended for the Commonwealth by virtue of the Liquor Code to regulate morality and lewdness, that does not mean that local municipalities are precluded from exercising zoning controls over establishments thought by some to be potentially lewd and/or immoral. As long as the zoning regulations are liquor-neutral . . . , liquor licensees should not be able to elude zoning regulations and be in any better position than 'dry' establishments merely by virtue of a license to serve alcohol.

*1916 Delaware*, 657 A.2d at 69 (footnote omitted). The Court also rejected the licensees' argument that preemption was appropriate because the PLCB also

regulates entertainment in a licensed establishment. While acknowledging that "the Liquor Code and regulations promulgated thereto seem to cover virtually all imaginable aspects of entertainment[,]" the licensees' characterization of the zoning provision as a liquor regulation was erroneous. *1916 Delaware*, 657 A.2d at 69. The Court concluded:

> Here, the [c]ity is properly attempting to enforce a zoning regulation related to the location, not only of cabarets, which might or might not sell alcoholic beverages, but also of other establishments such as adult book stores and theaters, which do not. Although [c]ity [c]ouncil's definition of cabaret does indeed include descriptions of how much cloth entertainers must wear or, as the case may be - not wear, in order to qualify an establishment as a cabaret, [city c]ouncil in that section also specifically outlines permissible and prohibited locations for *all* cabarets *whether or not licensed by the* [*PLCB*] with a view to concerns about matters of public health and welfare, aesthetics, economics, crime and neighborhood deterioration. Thus, the regulation which does not prohibit cabarets, whether with or without licenses, but which merely places them in specific geographic locations in the [c]ity, has not been preempted by the Liquor Code.

*Id*. at 70.

In *Licensed Beverage Association of Philadelphia v. Board of Education of School District of Philadelphia*, 669 A.2d 447 (Pa. Cmwlth. 1995), *abrogated on other grounds by Buffalo Township v. Jones*, 813 A.2d 659 (Pa. 2002), this Court held that the Liquor Code did not preempt Philadelphia City Council's tax on malt and brewed beverages where the General Assembly specifically authorized the municipality to impose such a tax. This Court explained:

> Although preemption in the liquor industry by the Commonwealth prevents municipalities from regulating local liquor establishments, it does not prevent taxation under a specific enabling act expressly giving the authorization to tax liquor or malt and brewed beverages. Where the power is with the legislature to preempt a field,

14

the legislature also has the power to make exceptions by expressly giving a municipality the power to tax under defined circumstances. Also, preemption, as a judicial doctrine, is only relevant where the legislature is silent about whether a municipality may regulate the field. However, in this instance, the legislature was not silent as to local taxation; it specifically authorized the [c]ity to impose this liquor-by-the-drink tax.

*Licensed Beverage Ass'n*, 669 A.2d at 451-52 (footnote omitted).

In *Compton v. Zoning Hearing Board of Pennsbury Township*, 708 A.2d 871 (Pa. Cmwlth. 1998), this Court affirmed a trial court's order vacating conditions on alcohol service that were imposed by the township zoning hearing board due to the trial court's conclusion that the Liquor Code preempted the conditions. The zoning hearing board had imposed conditions pertaining to the sale of alcohol because it considered the addition of alcohol service as a change in a nonconforming use, requiring the grant of a special exception. Numerous objectors appealed from the trial court's decision to this Court, arguing that the 1994 Amendment and *1916 Delaware* supported their position that the conditions were not preempted.

Considering the objectors' arguments, this Court explained:

The [C]ourt in [*1916*] *Delaware* held that zoning regulations prohibiting cabarets, with or without liquor licenses, in certain geographic location[s] within the city, were not pre-empted by the Liquor Code, but that municipalities are still limited to liquor[-]neutral zoning regulations. The [*1916*] *Delaware* [C]ourt discussed the pervasiveness of the regulation scheme controlling the alcoholic beverage industry, but recognized that municipalities could exercise appropriate zoning controls over liquor licensees, citing [*Wilsbach*] and [*Wissinoming*]. . . . [The o]bjectors recognize, as does this Court, that no other case has been decided that in any way interprets the 1994 [A]mendment. However, we believe that the amendment was, in essence, codifying prior case law. Based on the language from the [*1916*] *Delaware* opinion quoted above and in light of the language of the amendment, we hold that zoning boards may still only place

15

conditions on uses that are liquor[-] neutral. Thus, the trial court's decision striking [the] conditions . . . was proper. These . . . conditions were not liquor[-]neutral and invaded the province of the Liquor Control Board that is charged with the responsibility of overseeing and regulating the sale of alcohol.

*Compton*, 708 A.2d at 874.

In *City of Philadelphia v. Tax Review Board of the City of Philadelphia*, 713 A.2d 718 (Pa. Cmwlth. 1998), this Court affirmed a trial court decision which upheld an order granting beer distributors' refund petitions for city U & O taxes. In reaching its decision, this Court reviewed *Wissinoming* and the Supreme Court's opinion in *Wilsbach* which the appellants, the city and the school district urged the Court to disregard. In rejecting the appellants' arguments, this Court explained:

> The compelling reasons to disregard *Wissinoming* stated by [the a]ppellants are that the case was wrongly decided and that subsequent case law has cast doubt upon its validity. [The a]ppellants proceed with their argument as if the Supreme Court has not held that the General Assembly intended to preempt local taxation of malt and brewed beverage distributors in *Wilsbach* and has not affirmed our Court's adherence to this principle in *Wissinoming*. Rather, [the a]ppellants argue that the beer distributors in this case had not established their entitlement to a 'special exception' from the U & O tax and then proceed to argue that such an 'exemption' is not logical, in accordance with law, or supportive of the constitutional requirement that the [s]chool [d]istrict provide for appropriate public education. These arguments have nothing to do with whether the Commonwealth has preempted local regulation and taxation from the field, however. The beer distributors in this case established their 'exemption' simply by reference to the standing law of the Commonwealth. We turn, then, to more recent law that [the a]ppellants argue undercuts both *Wissinoming* and *Wilsbach*.
>
> [The a]ppellants first argue that the validity of *Wilsbach* has been cast into doubt by a 1994 [A]mendment to the Liquor Code. Section 8 of the Act of October 5, 1994, P.L. 522, added [Section 493.1] to the Liquor Code, providing:

'Nothing in this act shall be construed to preempt the right of any municipality to regulate zoning and enforce any other local ordinances and codes dealing with health and welfare issues.' This provision, however, is silent concerning local taxation, and there is nothing in the section that indicates that the term 'health and welfare issues' is to be construed so broadly as to include taxation. In light of *Wilsbach* and *Wissinoming,* had the legislature intended that local bodies may assess local taxes against distributors of malt and brewed beverages it would have so plainly stated. Indeed, Justice Zappala, concurring in *Wilsbach,* expressed his trust that the General Assembly would correct any erroneous interpretation of its intent to preempt a field. *Wilsbach, . . .* 519 A.2d at 404. The legislature has been silent as to the interpretation attributed to it in *Wilsbach* and *Wissinoming.* We must therefore presume that *Wilsbach* and *Wissinoming* remain consistent with legislative intent.

*Tax Review Bd.*, 713 A.2d at 721. This Court concluded:

We may not overturn *Wilsbach.* Moreover, the general principle espoused by a majority of Justices in *Wilsbach,* that 'the existence of comprehensive regulatory schemes' in the liquor industry preempts 'local taxation measures,' has been recently restated in a *majority* decision of our Supreme Court in *Cheltenham T[wp.] v. Cheltenham Cinema, Inc., . . . .* 697 A.2d 258, 260 ([Pa.] 1997). *Wissinoming* followed that principle and was *affirmed* by our Supreme Court. Therefore, any discussion of this Court's subsequent case law, that does not in any way overrule *Wissinoming,* is of no avail.

*Tax Review Bd.*, 713 A.2d at 721 (emphasis in original). Accordingly, the Court held that the City of Philadelphia's U & O tax was preempted.

In *City of Philadelphia v. Clement & Muller Inc.*, 715 A.2d 397 (Pa. 1998), our Supreme Court considered whether, as imposed on licensed beer distributors, Philadelphia's Business Privilege and Mercantile Tax was preempted by the Liquor Code. Although the Court acknowledged the factual similarities to *Wilsbach*, it held that, unlike the facts in *Wilsbach*, the tax was not preempted since

17

the First Class City Business Tax Reform Act, Act of May 30, 1984, P.L. 345, 53 P.S.

§§ 16181-16193, specifically provided:

> *Notwithstanding a contrary provision of law of the Commonwealth,* including, but not limited to, the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971 [72 P.S. § 7101 et seq.] . . . every person engaging in any business in a city of the first class . . . shall pay an annual tax at the rate or rates specified by the city council. . . .
>
> (Emphasis added.) The meaning of the emphasized introductory language is straightforward: regardless of what any other law provides, first class cities are authorized by this act to collect a tax from every person engaging in any business within the city.

*Clement & Muller*, 715 A.2d at 399. In a footnote, the Court distinguished

*Wissinoming*, stating:

> The [a]ppellants' argument that the decision here conflicts with *Wissinoming* . . . and *Liberty Bell Racing Ass['[]n v. Phila[.] Tax Review B[d.]*, . . . 483 A.2d 1063 ([Pa. Cmwlth.] 1984),[15] . . . is based on the premise that the taxes in those cases were adopted pursuant to enabling acts 'that for all practical purposes are identical' to the enabling act at issue here. Without revisiting those cases in depth, **the flaw in this argument is readily apparent. In neither of those cases did the statute authorizing the local tax specifically do so 'notwithstanding a contrary provision of law of the Commonwealth.'**

*Clement & Muller*, 715 A.2d at 399 n.3 (emphasis added).

Most recently, in *Aboud v. City of Pittsburgh Department of Planning*,

17 A.3d 455 (Pa. Cmwlth. 2011), this Court affirmed a trial court's holding that a city

---

[15] In *Liberty Bell*, this Court held that a corporation conducting harness racing was not subject to Philadelphia's Business Privilege and Mercantile License Tax and the School District of Philadelphia's General Business Tax, where the General Assembly clearly indicated that it intended to preempt the harness racing field with respect to taxation and regulation.

zoning ordinance restricting the number of restaurants with liquor licenses in a particular zone was not liquor-neutral and infringed upon the PLCB's authority. The zoning provision required that in a Local Neighborhood Commercial District, once a designated number of restaurants holding a license was exceeded, all restaurant applicants to obtain a liquor license must meet the zoning code's standards for conditional use.

This Court held that the zoning provision was problematic for two reasons. First, it treated liquor licensees differently in that it mandated additional hearings for licensees which resulted in more delays than a non-liquor licensee applicant seeking a special exemption. Further, the relevant zoning provision directly conflicted with the Liquor Code because it attempted to regulate the location of the restaurant after the PLCB issued the license. In concluding that the zoning provision was preempted, the Court reasoned:

> Here, pursuant to the Liquor Code, the [P]LCB exercised its exclusive authority to review an application for a liquor license to sell alcohol submitted by the [licensees]. After written notice to interested neighbors and the [c]ity, which chose not to participate in the licensing proceedings, the [P]LCB determined that the liquor license issued to the [licensees] did not have a detrimental effect on the welfare, health, peace and morals of the neighbors of the Southside before the [P]LCB issued the liquor license to the [licensees]. For the City to now claim that the [licensees] may not sell alcohol at their restaurant directly conflicts with the preemption doctrine under the Liquor Code. '*The preemption doctrine establishes a priority between potentially conflicting laws enacted by various levels of government. Under this doctrine, local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow.*' (Emphasis added). *Huntley & Huntley v. Borough Council of the Borough of Oakmont and the Borough of Oakmont, . . .* 964 A.2d 855, 862 ([Pa.] 2009). 'Additionally, a local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the Legislature.' *Id.* at . . . 863.

19

*Aboud*, 17 A.3d at 462.

Based on this history, the law is clear that the Liquor Code preempts the local U & O and business privilege taxation of liquor licensed establishments and taxation on liquor sales (unless the General Assembly has specifically authorized such a tax), and zoning ordinances (unless such ordinances are liquor-neutral, applying equally to businesses holding liquor licenses and those without). Although as cited herein, this Court has previously considered Liquor Code preemption as it pertains to taxation and zoning issues, and the application of Section 493.1 of the Liquor Code thereto, this Court is unaware of any case addressing whether the Liquor Code preempts a municipal ordinance or regulation which authorizes the revocation or denial of a business license renewal based on the licensee's conduct in operating his/her establishment.

Our Supreme Court has declared that "it is clear that the state may outright forbid the sale of intoxicating liquors and, if it decides to permit their sale, the state generally may impose such conditions as it sees fit." *St. Rd. Bar & Grille, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 346, 352 (Pa. 2005). Further, each individual authorized by the Commonwealth to sell liquor

> is under a duty not only to regulate his own personal conduct in a manner consistent with the permit he has received, but also to control the acts and conduct of any employee to whom he entrusts the sale of liquor. Such fealty is the *quid pro quo* which the Commonwealth demands in return for the privilege of entering the highly restricted and, what is more important, the highly *dangerous* business of selling intoxicating liquor.

*Id.* at 355 (quoting *Commonwealth v. Koczwara,* 155 A.2d 825, 828 (Pa. 1959) (emphasis in original)); *see also Pa. State Police v. S & B Rest., Inc.*, 52 A.3d 513 (Pa. Cmwlth. 2012). PLCB-licensed operations are tightly controlled under the

Liquor Code and PLCB's Regulations, which impose statutory obligations for virtually all aspects of the retail sale of alcohol.[16]

The Liquor Code is "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . . ." Section 104(a) of the Liquor Code, 47 P.S. § 1-104(a). Accordingly, Section 404 of the Liquor Code grants the PLCB authority to consider the health, welfare, peace and morals of the community when granting a liquor license. *See* 47 P.S. § 4-404(a). The Liquor Code provides several methods for handling nuisance establishments.[17] The Pennsylvania State Police, Bureau of Liquor Control Enforcement may issue citations to licensees for violations of the

---

[16] *See, e.g.*, Section 406 of the Liquor Code, 47 P.S. § 4-406 (pertaining to liquor sales by licensees); Section 407 of the Liquor Code, 47 P.S. § 4-407 (pertaining to malt or brewed beverage sales by licensees); Section 470 of the Liquor Code, 47 P.S. § 4-470 (permitting the PLCB's Bureau of Licensing to object to license renewal based on, inter alia, violation of law by licensee or its employees, and based on the manner in which the premises is operated); Section 491 of the Liquor Code 47 P.S. § 4-491 (describing fifteen unlawful acts relative to liquor, alcohol and liquor licensees); Section 492 of the Liquor Code, 47 P.S. § 4-492 (describing twenty-one unlawful acts pertaining to malt or brewed beverages and licensees); Section 493 of the Liquor Code, 47 P.S. § 4-493 (describing thirty-four unlawful acts relative to liquor, malt and brewed beverages and licensees); Section 498 of the Liquor Code 47 P.S. § 4-498 (pertaining to unlawful advertising); Section 499 of the Liquor Code, 47 P.S. § 4-499 (mandating that patrons vacate licensed premises not later than one-half hour after a licensee is required to cease serving alcohol); Sections 5.11-5.23 of the PLCB's Regulations, 40 Pa. Code §§ 5.11-5.23 (pertaining to employees of licensees); Sections 5.30-5.36 of the PLCB's Regulations, 40 Pa. Code §§ 5.30-5.36 (pertaining to amusement and entertainment at a licensed premises); Sections §§ 5.41-5.54 of the PLCB's Regulations, 40 Pa. Code §§ 5.41-5.54 (pertaining to sanitary conditions and lighting and cleaning of malt or brewed beverage systems); Section 5.321 of the PLCB's Regulations, 40 Pa. Code § 5.321 (relating to minors on licensed premises).

[17] These remedies are in addition to Liquor Code provisions permitting citation and revocation, suspension and/or fines for Liquor Code and PLCB Regulation violations **and for "other sufficient cause shown."** Section 471(a) of the Liquor Code, 47 P.S. § 4-471(a) (emphasis added). "Courts have interpreted Section 471 of the Liquor Code as providing similar authority for the imposition of penalties **for a variety of conduct not expressly prohibited by the Liquor Code, but reasonably related to the sale and use of alcoholic beverages**, including gambling." *P[a.] State Police, Bureau of Liquor Control Enforcement v. Harrisburg Knights of Columbus Home Ass'n*, 989 A.2d 39, 44 (Pa. Cmwlth. 2009) (emphasis added).

Liquor Code or PLCB Regulations.  Further, Section 470(a.1) of the Liquor Code[18] authorizes the PLCB to refuse to renew a license:[19]

> (1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the [PLCB];
>
> (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the [PLCB] . . . ;
>
> . . . .
>
> (4) **due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license.  When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated.** The [PLCB] may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. § 4-470(a.1) (emphasis added).  Pursuant to Section 464 of the Liquor Code,[20] PLCB nonrenewal decisions are reviewed by a trial court *de novo*.  In addition, Section 611 of the Liquor Code permits certain parties, including municipalities, to bring nuisance actions in county common pleas courts against liquor licensees. Section 611 of the Liquor Code provides, in pertinent part:

---

[18] Section 470(a.1) of the Liquor Code was added by the Act of December 21, 1998, P.L. 1202, No. 155.

[19] Restaurant liquor licensees must renew their licenses every two years.

[20] 47 P.S. § 4-464.

(a) Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, or stored in bond, or stored for hire, in violation of this act, and all such liquids, beverages and property kept or used in maintaining the same, are hereby declared to be common nuisances, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to the same penalties provided in section four hundred ninety four of [the Liquor Code].

(b) An action to enjoin any nuisance defined in this act may be brought in the name of the Commonwealth of Pennsylvania by the Attorney General, by the Pennsylvania State Police through its Bureau of Liquor Control Enforcement, **by the municipality wherein the establishment is located**, by the district attorney of the proper county or by a person who resides or has a place of business within five hundred feet of the location of the alleged nuisance. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases within the county in which the offense occurs. If it is made to appear, by affidavit or otherwise, to the satisfaction of the court that such nuisance exists, a temporary writ of injunction shall forthwith issue, restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the proceedings. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquids, beverages or other things used in connection with the violation of this act constituting such nuisance. . . . It shall not be necessary for the court to find the property involved was being unlawfully used, as aforesaid, at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquor, alcohol or malt or brewed beverage shall be manufactured, sold, offered for sale, transported, bartered or furnished, or stored in bond, or stored for hire in such room, house, building, structure, boat, vehicle, or place, or any part thereof.

47 P.S. § 6-611 (emphasis added).

Relying on Section 493.1 of the Liquor Code, the City contends that it has authority to deny Licensee's License renewal based on Licensee's operations, where the result is the cessation of a PLCB-licensed business subject to the legislature's pervasive regulatory scheme governing liquor licensee operations. Specifically, it argues that its ordinance permitting the nonrenewal of the License is a "local ordinance[] . . . dealing with health and welfare issues[,]" 47 P.S. § 4-493.1(a), since the operation of a nuisance establishment impacts the health and welfare of the community. It strongly urges this Court to consider the ordinance a "health and welfare [matter], and not a taxation matter." City Br. at 19.[21] The City further represents that the General Assembly granted it the authority to impose such a licensing requirement. The City is a third class city under the Third Class City Code (Code).[22] Section 12601.1(a) of the Code provides that "[c]ouncil may, by ordinance, designate the types or kinds of businesses or occupations located or carried out within the city that are subject to annual registration with the city[,]" and permits the City to impose a nominal annual fee for administration of the registration program. 11 Pa.C.S. § 12601.1(a). In accordance therewith, the Ordinance requires a person or entity operating a business within the City to obtain a license. Section 12654 of the Code provides:

> This chapter shall not be construed to relieve a person from the duty of taking out a license or from the payment of any license tax or fee imposed or authorized by any other statute, **nor shall any Commonwealth license tax or fee preempt the registration**, **licensure** or **regulatory powers**

---

[21] Despite the City's characterization, the Ordinance section authorizing the City's action is contained in the Chapter titled "Business Privilege and Mercantile Tax." Ordinance, Chapter 5-715. The tax itself was already found by our Supreme Court to be inapplicable to businesses holding liquor licenses. *See Wilsbach*.

[22] 11 Pa.C.S. §§ 10101-14702.

24

**of a city in accordance with this chapter,**[23] unless the preemption is expressly authorized.

11 Pa.C.S. § 12654 (emphasis added). The City operates under Article IV of the Charter Law, known as the "mayor-council plan A" structure. Section 401 of the Charter Law, 53 P.S. § 41401. Section 304 of the Charter Law states:

> The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city.

53 P.S. § 41304.

Importantly, none of the statutory provisions the City cites for its purported authority to impose license nonrenewal on liquor licensees, specifically authorizes regulation or taxation of liquor, or liquor licensed establishments. *See, e.g., Licensed Beverage Ass'n; Clement & Muller*. Further, unlike the facts in *1916 Delaware*, Regulation 109 is not a zoning ordinance. Instead, it is a regulation designed **specifically to govern the operation of businesses** and to impose consequences, authorizing the Appeal Board to terminate operating authority when it

---

[23] Section 12654 of the Code is contained in Chapter 126 of the Code. Apart from the **registration** of businesses under Section 12601.1, that chapter provides for the regulation of motor vehicles (11 Pa.C.S. § 12602); Licensing of Plumbers (11 Pa.C.S. § 12603); regulation of transient merchants (11 Pa.C.S. § 12604); regulation of special events (11 Pa.C.S. § 12605); regulation of parking lot and parking garage operators (11 Pa.C.S. § 12650); regulation of farmers (11 Pa.C.S. § 12651); regulation of insurance business (11 Pa.C.S. § 12652); and regulation of persons taking orders by samples (11 Pa.C.S. § 12653). Notably, the only regulatory powers referenced in Chapter 126 of the Code pertain to the aforementioned subjects. There are no regulations in Chapter 126 of the Code pertaining to the manner of operation of a bar or restaurant.

determines the business license holder's operations constitute a nuisance. As it pertains to liquor licensees, Regulation 109 grants to the mayor and the Appeal Board the authority to regulate liquor licensees' activities, notwithstanding that the General Assembly, in the Liquor Code, granted such authority to the PLCB, the Pennsylvania State Police, and the trial court. The City's denial of Licensee's 2016 License renewal also effectively overrides the Commonwealth's affirmative grant of authority to Licensee to sell alcoholic beverages. Moreover, the City's interpretation affords its Appeal Board's nonrenewal decision relative to a liquor licensee more deference under the Local Agency Law than that of the PLCB which, under the Liquor Code, is granted **no** deference in a nonrenewal matter by a reviewing trial court. *See* 47 P.S. § 4-464.

The City argues that ameliorating a nuisance is a "health and welfare issue[,]" for which Section 493.1 of the Liquor Code authorizes local involvement. However, since Section 104 of the Liquor Code describes the Liquor Code's purpose as "an exercise of the police power of the Commonwealth **for the protection of the** public **welfare, health**, peace and morals of the people of the Commonwealth . . . ," any Liquor Code provision could be interpreted to involve "health and welfare issues." 47 P.S. § 1-104 (emphasis added). Taking the City's rationale to its logical end, Section 493.1 of the Liquor Code would permit a municipality to legislate and override **any** provision of the Liquor Code, and would thereby allow the exception to swallow the rule.

The well-established law is that the Liquor Code cannot preempt liquor-neutral health and welfare related ordinances, such as health and fire codes. However, given the pervasive nature of the Liquor Code over every aspect of **the day-to-day operations** of a liquor licensed establishment, especially in regulating a licensee's alleged nuisance, this Court declines to interpret Section 493.1 of the Liquor Code to permit the invasive municipal control at issue here by including such

26

within the definition of "health and welfare[.]" 47 P.S. § 4-493.1. The practical impact of upholding the Ordinance and permitting the City to deny renewal of Licensee's License possibly, and most likely, based on the same incidents the PLCB considered to be insufficient to deny renewal of the Licensee's liquor license, demonstrates the Ordinance's meddlesome intrusion into the highly-regulated area of liquor distribution and sales. Section 611 of the Liquor Code explicitly permits municipalities to seek the closure of nuisance liquor licensed premises. For reasons not evident in the record, the City did not pursue Licensee's closure thereunder. We do not believe the General Assembly intended to permit a municipality to achieve that result through other means.[24]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[24] Given our disposition of the first issue, we need not address the remaining issues.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

1400 North Third Street            :
Enterprises, Inc.                    :
                                  :
            v.                     :
                                  :
The City of Harrisburg           :
License and Tax Appeal Board,    :    No. 1363 C.D. 2016
                 Appellant    :

## O R D E R

AND NOW, this 29th day of November, 2017, the Dauphin County Common Pleas Court's July 11, 2016 Order is affirmed.

_____
ANNE E. COVEY, Judge